FILED'11 APR 21 10:17USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| ROBERT D. HUBBARD; and CASEY L. HUBBARD,<br><br>          Plaintiffs,<br><br>     v.<br><br>BANK OF AMERICA,<br><br>          Defendant. | Civil No. 10-3094-CL<br><br>REPORT AND RECOMMENDATION |

CLARKE, Magistrate Judge:

    Plaintiffs Robert D. Hubbard and Casey L. Hubbard, who are proceeding pro se, filed a complaint in state court "for Declaratory Judgment for Verification of Debt." The action was removed to this court by defendant Bank of America. Plaintiffs seek release of all claims against them due to lack of proof of claim and standing; that no further action be taken against them, including but not limited to foreclosure sale, trustee sale, or quiet title action; removal of all derogatory credit reporting; marking the note and account as "settled in full" in defendant's record and all public records, including credit bureau records; return of all monies collected to date with interest; full conveyance on the deed of trust; and any other appropriate

Report and Recommendation - Page 1

remedy. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332. The parties appeared in court for oral argument on defendant's motion to dismiss plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) (#5), which plaintiffs oppose. For the reasons explained below, defendant's motion should be granted.

## LEGAL STANDARDS

In considering whether a complaint states a claim for relief under Rule 12(b)(6), the factual allegations, taken as true, must be sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). Further, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555.

In considering a motion to dismiss, the court accepts the complaint allegations of material fact as true and construes these allegations in favor of the non-moving party. N. County Cmty. Alliance, Inc. v. Salazar, 573 F.3d 738, 741-42 (9th Cir. 2009), cert. denied, ___ U.S. ___, 130 S. Ct. 2095 (2010). The court may also consider any document whose authenticity is not questioned which are attached to or incorporated by reference into the complaint. Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). Any

Report and Recommendation - Page 2

allegations in the complaint which contradict these documents need not be accepted as true by the court. Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

Neither Iqbal nor Twombly altered the court's treatment of pro se pleadings. Hebbe v. Pliler, 627 F.3d 338, 342 & n.7 (9th Cir. 2010). Complaint allegations of pro se plaintiffs are held to less stringent standards than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and complaints by pro se plaintiffs are liberally construed, Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988). A pro se litigant should be given leave to amend his complaint unless it is absolutely clear that no amendment could cure the deficiencies of the complaint. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); Barrett v. Belleque, 544 F.3d 1060, 1061-62 (9th Cir. 2008) (per curiam).

Federal Rules of Civil Procedure Rule 8(a) requires that a complaint set forth a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim, and a demand for judgment for the relief plaintiff seeks. It does not require extensive or technically precise pleadings, but does require the presentation of factual allegations with sufficient clarity and certainty to enable defendant to determine the basis of plaintiff's claim and to formulate a responsive pleading. Edwards v. N. Am. Rockwell Corp., 291 F. Supp. 199, 211 (C.D. Cal. 1968). The purpose of the rule is to give defendant fair notice of what plaintiff's claim is and the grounds upon which it rests. Velasquez v. Senko, 643 F. Supp. 1172 (N.D. Cal. 1986).

//

//

## BACKGROUND

It appears that plaintiffs' complaint arises from their allegations that defendant has not shown that it is the holder in due course of their note and deed of trust. They assert that, because of the uncertainty of who the note holder in due course is and who is entitled to collect on the promissory note, "it is reasonable for the Plaintiff [sic] to verify whether or not the Defendant has a valid claim, standing to foreclose, and the lawful right of enforcement to collect money on the alleged loan." (Notice of Removal Ex. 1 at 4.) Plaintiffs allege that they sent to defendant a Nice Offer and Demand "requesting the original wet ink signature to establish proof of claim," (Notice of Removal Ex. 1 at 4), and a Notice of Fault in Dishonor and Opportunity to Cure requesting proof of claim. Plaintiffs describe each of these two documents as a Qualified Written Request (QWR). They allege that defendant has not responded to these requests.

Plaintiffs assert that, as a result of defendants failures to respond, certain "presumptions of law" are rebutted and their claims arise. They conclude that defendant's refusal and failures to produce the original wet ink signature promissory note with the allonge and the original deed of trust is an admission of its lack of claim.

## DISCUSSION

As an initial matter, the court notes a contradiction in plaintiffs' complaint allegations and their attached exhibits, and in their response to defendant's motion to dismiss. In their complaint, they allege that, "The Plaintiff did agree to sign a promissory note and Deed of

Trust with the Defendant in exchange for a purported loan from them."[1] (Notice of Removal Ex. 1 at 3.) However, in the "Statement of Facts" section of their response to motion to dismiss, plaintiffs state:

> Plaintiff's [sic] signed a promissory note and deed of trust, Not in favor of Bank of America but with Taylor, Bean & Whitaker Mortgage Co, who went bankrupt and the debt was allegedly bought by Bank of America. . . . At no time has Plaintiff's [sic] signed any documents with Bank of America nor has Bank of America produced any proof of claim of debt, just the opposite Bank of America claimed it is the Servicer of the Loan not the Debt holder.

(Pls. Resp. at 2-3.) And in a document entitled, "Affidavit of Truth," which is attached to their complaint as Exhibit C, plaintiffs state the "Current Servicer" is Bank of America. (Notice of Removal Ex. 1 at 48.)

It is also noteworthy that plaintiffs do not allege in their complaint that defendant has commenced foreclosure proceedings or undertaken any collection activities on the loan.

### Plaintiffs' "show me the note" theory

The focus of plaintiffs' complaint is their claim that defendant must produce the original wet ink signature note to prove that it is the note holder in due course of plaintiffs' promissory note and deed of trust. Such claims have been found by the courts to be "not viable." See Sundell-Bahrd v. Tiffany & Bosco, P.A., No. CV 10-8096-PCT-MHM, 2010 WL 2595083, at *2 (D. Ariz. June 24, 2010).

> In 2009, a foreclosure defense colloquially termed "show me the note" began circulating through courts across the country. Advocates of this theory believe

---

[1] In plaintiffs' notarized document entitled, "Affidavit of Truth," attached as Exhibit C to their complaint, plaintiffs represent that the original loan and original deed of trust were dated January 22, 2008. (Notice of Removal Ex. 1 at 48.)

Report and Recommendation - Page 5

> "that only the holder of an original wet-ink signature note has the lawful
> power to initiate a non judicial foreclosure." Courts have routinely rejected
> the defense on the ground that foreclosure statutes simply do not require
> production of the original note at any point during the proceedings.

Stein v. Chase Home Fin., LLC, Civ. No. 09-1995 (MJD/JJG), 2010 WL 4736828, at *3 (D. Minn. Aug. 13, 2010) (citations omitted) (and cases cited), adopted by order, 2010 WL 4736233 (D. Or. Nov. 16, 2010). In Oregon, "the Oregon Trust Deed Act, O.R.S. § 86.705 *et seq.*, does not require presentment of the Note or any other proof of 'real party in interest' or 'standing,' other than the Deed of Trust." Stewart v. Mortg. Elec. Registration Sys., Inc., No. CV. 09-687-PK, 2010 WL 1055131, at *12 (D. Or. Feb. 9, 2010), adopted by order, 2010 WL 1054775 (D. Or. Mar. 19, 2010); McDaniel v. BAC Home Loans Servicing, LP, No. 10-6143-HO, 2011 WL 1261387, at *3 (D. Or. Mar. 31, 2011) (citing ORS 86.705 to ORS 86.795); Tabb v. One West Bank (Indymac), No. CV-10-855-ST, 2010 WL 5684402, at *5 (D. Or. Nov. 1, 2010) ("Oregon . . . does not require any party to a trustee's sale to produce a physical copy of the original note."), adopted by order, 2011 WL 344593 (D. Or. Jan. 31, 2011).[2]

Any claim by plaintiffs that defendant must produce the original wet ink signature note should be dismissed. See Tabb, 2010 WL 5684402, at *5; Earl v. Wachovia Mortg. FSB, No. CV 09-2198-PHX-MHM, 2010 WL 2336191, at *2 (D. Ariz. June 10, 2010); Sakala v. BAC Home Loans Servicing, LP, CV No. 10-000578 DAE-LEK, 2011 WL 719482, at *7 (D. Haw. Feb. 22, 2011) (in absence of any factual or legal support for "show

---

[2] Under the Oregon Trust Deed Act, if foreclosure by sale is pursued, the trust deed, any assignment of the trust deed, and any appointment of a successor trustee must be recorded in the real property records. ORS 86.735; Stewart, 2010 WL 1055131, at *12; McDaniel, 2011 WL 1261387, at *3.

Report and Recommendation - Page 6

me the note" claim, it cannot withstand motion to dismiss); Gallant v. Deutsche Bank Nat'l Trust Co., ___ F. Supp.2d ___, Civil Action No. 3:10CV00006, at *4 (W.D. Va. Feb. 2, 2011).

### Real Estate Settlement Procedures Act

In the Conclusion portion of their complaint, plaintiffs allege conclusorily that defendant was required to respond to the QWRs sent to it under RESPA.

Defendant contends that neither document sent to it by plaintiffs is a QWR within the meaning of the Real Estate Settlement Procedures Act (RESPA) and, even if they are, plaintiffs do not allege any actual damages. Plaintiff responds that both submissions for proof of claim to defendant were according to RESPA and the Uniform Commercial Code and defendant has not responded; they assert that they plead a plausible claim under RESPA.

A QWR under RESPA is "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer" which allows the servicer to identify the name and account of the borrower and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). A "servicer" is defined, with certain exceptions not applicable here, as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2). In response to such inquiry, the servicer must, within twenty days, acknowledge receipt in writing and, within sixty days,

Report and Recommendation - Page 7

> must take one of the following steps: (1) make any necessary corrections and notify the borrower; (2) after investigation, send a written explanation to the borrower that explains why the servicer believes the account is correct; or (3) after investigation, provide the requested information, "or an explanation of why the information requested is unavailable or cannot be obtained by the servicer."

Kelly v. U.S. Bank, Civ. No. 08-1421-AC, 2010 WL 4135028, at *11 (D. Or. July 29, 2010) (quoting Kee v. Fifth Third Bank, No. 2:06-CV-00602-CW, 2009 WL 735048, at *3 (D. Utah Mar. 18, 2009); 12 U.S.C. § 2605(e)(2)), adopted by order, 2010 WL 4116754 (D. Or. Oct. 14, 2010). The duty of the servicer to respond arises when it receives a QWR from the borrower "for information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). "Servicing" within the meaning of section 2605 "means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

The court has reviewed plaintiffs' documents "Nice Offer and Demands" and "Notice of Fault in Dishonor[,] Opportunity to Cure" (Notice of Removal Ex. 1 at 15-44, 45-47) allegedly sent to defendant and concludes that plaintiffs' communications do not relate to the servicing of their loan. Plaintiffs instead inquire about the validity of the loan and the underlying mortgage documents, including inquiries about broad banking practices. Neither document constitutes written correspondence or QWRs within the meaning of RESPA. See Kelly, 2010 WL 4135028, at *13; MorEquity, Inc. v. Naeem, 118 F. Supp.2d 885, 901 (N.D. Ill. 2000). Accordingly, to the extent that plaintiffs attempt to state a claim for violation of

Report and Recommendation - Page 8

RESPA based upon defendant's alleged failure to respond to either of the documents sent to it by plaintiffs, such claim should be dismissed.

**Uniform Commercial Code**

Plaintiffs allege in their complaint that what is at issue is whether defendant has the authority of the holder or from the holder, citing the Uniform Commercial Code (UCC). They allege that it is necessary for defendant to show proof of claim in order to have the authority to enforce the negotiable instrument.

Defendant contends that the UCC does not require that it present the original wet ink signature note. It also contends that plaintiffs have not alleged that defendant has sued to enforce the note nor have they alleged that the note was lost or stolen. Plaintiffs respond that, because defendant has not responded to their requests to provide evidence of proof of claim, they must conclude that "the Note and Deed Original Documents" are lost or stolen and request leave to amend the complaint to allege under the UCC or RESPA that the original note and deed are lost or stolen. (Resp. at 1.)

Chapter 73 of the UCC which governs negotiable instruments, provides in pertinent part that,

> "Person entitled to enforce" an instrument means the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to ORS 73.0309 [because the instrument is lost, destroyed or stolen] . . . . A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

ORS 73.0301. The UCC does not require defendant to present the original note as claimed by plaintiffs. Id.; see ORS 86.705 *et seq.* and cases cited supra; Earl, 2010 WL 2336191, at *2 ("When addressing the applicability of the UCC to foreclosure sales [in Arizona, which allows nonjudicial trustee sales or foreclosures], courts within the District of Arizona 'have routinely held that [a plaintiff's] "show me the note" argument lacks merit."; dismissing with prejudice any count relating to the production of the original note); Sundell-Bahrd, 2010 WL 2595083, at *2.

To the extent that plaintiffs attempt to state a UCC claim against defendant based upon a failure to present the original note, the claim should be dismissed. Allowing amendment by plaintiffs to allege that the note is lost or stolen would not assist them. See supra, ORS 73.0301 and 73.0309.

### Truth In Lending Act

In the Conclusion portion of their complaint, plaintiffs allege conclusorily that defendant was required to respond to the QWRs sent to it under TILA.

Defendant contends that plaintiffs fail to explain how it violated TILA and that TILA is inapplicable here. It also contends that, even if TILA applies, a one-year statute of limitations applies. Plaintiffs do not respond to these arguments.

The purpose of TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). TILA requires creditors

Report and Recommendation - Page 10

provide consumers with clear and accurate disclosures of loan terms such as finance charges, annual percentage rates of interest, and the borrower's rights. See 15 U.S.C. §§ 1631, 1632, 1635, 1638; Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998).

As their response to defendant's motion makes clear, plaintiffs' complaint allegations do not concern any failure of defendant to disclose any terms of their loan, but focuses on defendant's alleged failure to show it is the holder in due course of plaintiffs' promissory note. To the extent that plaintiffs attempt to plead a claim under TILA, the claim should be dismissed.

### Fair Debt Collection Practices Act

In their complaint, plaintiffs allege that under the Fair Debt Collection Practices Act (FDCPA), "this Debt is hereby disputed," citing 15 U.S.C. § 1692g. (Notice of Removal Ex. 1 at 6.)

Defendant contends that plaintiffs fail to allege any conduct or facts which would support a claim under the FDCPA. It asserts that the FDCPA does not apply to parties who are not "debt collectors" within the meaning of the Act and specifically does not apply to loan servicers, as plaintiffs describe defendant. Plaintiffs do not respond to defendant's arguments.

As a threshold matter, the FDCPA applies only to a "debt collector" who engages in practices prohibited by the Act in an attempt to collect a "debt." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, ___ U.S. ___, 130 S. Ct. 1605, 1608 (2010). The FDCPA defines "debt collector" in pertinent part as: "any person who uses any

Report and Recommendation - Page 11

instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The Act therefore is not limited in application to collection agencies, but rather "regulates the conduct of 'any person' in 'any business' whose (1) principal purpose is debt collection, or (2) who regularly collects or attempts to collect debts, indirectly or directly." Romine v. Diversified Collection Servs., Inc., 155 F.3d 1142, 1146 (9th Cir. 1998) (citing 15 U.S.C. § 1692a(6)). Possession of the debt or personal financial benefit from the satisfaction of the debt is not necessary for liability as a "debt collector" to attach under the FDCPA. Id.

"The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir.) (cited for this proposition by Stewart v. Mortg. Elec. Registration Sys., Inc., No. CV-09-688-PK, 2010 WL 1054384, at *9 (D. Or. Feb. 18, 2010), adopted by order, 2010 1054697 (D. Or. Mar. 19, 2010); Kellers v. Ocwen Loan Servicing, LLC, Civil No. 09-6076-TC, 2009 WL 2899813, at *2 (D. Or. Sept. 9, 2009); Caligiuri v. Columbia River Bank Mortg. Group, Civ. No. 07-3003-PA, 2007 WL 1560623, at *6 (D. Or. May 22, 2007), aff'd, 329 F.App'x 93 (9th Cir. 2009)), modified on other grounds, 761 F.2d 237 (5th Cir. 1985); see 15 U.S.C. § 1692a(6)(F); Williams v. Countrywide Home Loans, Inc., 504 F. Supp.2d 176, 190 (S.D. Tex. 2007), aff'd, 269 F.App'x (5th Cir. 2008); see also Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536

Report and Recommendation - Page 12

(7th Cir. 2003) ("the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not").

As noted initially, contrary to plaintiffs' complaint allegations that they signed a promissory note and deed of trust with defendant for a loan from defendant, plaintiffs state in their response to defendant's motion that they signed the note and trust deed with another company and "the debt was allegedly bought by Bank of America." (Pls. Resp. at 2-3.) In their "Affidavit of Truth" signed by plaintiffs and attached to their complaint, plaintiffs state following "Original Loan Number" and "Original Deed of Trust (Contract) Number," that the "Current Servicer" is "Bank of America," referencing the same account number and date of the original loan. (Notice of Removal Ex. 1 at 48.) And as noted previously, plaintiffs do not allege that the loan is in default. However, whether the court takes plaintiffs' allegations as true or allows plaintiffs to amend their complaint to allege that "the debt was allegedly bought by Bank of America" (Pls. Resp. at 2), the determination whether defendant is a "debt collector" is the same. The information before the court shows that defendant is a servicer of the loan and there is no indication that the loan is in default. Plaintiffs offer no other facts in their response and do not address defendant's FDCPA argument. Under the authorities cited, supra, defendant is not a "debt collector" within the meaning of the FDCPA. Plaintiffs make no argument to the contrary.

To the extent that plaintiffs attempt to state an FDCPA claim against defendant, the claim should be dismissed.

//

//

Report and Recommendation - Page 13

**Declaratory judgment**

In their complaint allegations, plaintiffs petition the court "to render a Declaratory Judgment as to whether or not the Defendant has a valid claim on the purported loan as referenced in this case." (Notice of Removal Ex. 1 at 6.)

Defendant contends that plaintiffs are not entitled to declaratory relief. Plaintiffs respond that declaratory relief is the only option for them "to obtain a declaration that Bank of America is not the legal Debtor of Plaintiff's [sic] loan or property and title should be transferred to them." (Pls. Resp. at 2.)

The court's power to grant declaratory relief is limited to "a case of actual controversy." 28 U.S.C. § 2201; Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 272-73 (1941). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Md. Cas. Co., 312 U.S. at 273. The court has found that plaintiffs' attempts to plead claims under a "show me the note" theory, RESPA, the UCC, TILA, and the FDCPA should be dismissed on the ground that they fail to state viable claims. All of plaintiffs' claims are premised upon their assertion that defendant must produce the original signed promissory note and, as shown above, plaintiffs do not allege any cognizable claim for relief on this theory.

Because there is no actual controversy between plaintiffs and defendant on the allegations and arguments advanced in response to defendant's motion to dismiss, this action should be dismissed.

Report and Recommendation - Page 14

**Plaintiffs' discussion of the "MERS Decisions"**

In their complaint and response to defendant's motion, plaintiffs reference certain decisions relating to the Mortgage Electronic Registration Systems to which defendant replies. These cases do not assist plaintiffs. Plaintiffs do not allege any facts that the note was assigned and do not allege any other facts which involve MERS. MERS is not a party in this action.

## RECOMMENDATION

Based on the foregoing, it is recommended that defendant's motion to dismiss (#5) be granted.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. *Objections to this Report and Recommendation, if any, are due by May 10, 2011. If objections are filed, any response to the objections are due by May 27, 2011,* see *Federal Rules of Civil Procedure 72 and 6.*

Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

//

DATED this __21__ day of April 2011.

_____
UNITED STATES MAGISTRATE JUDGE